STATE OF MAINE                                          SUPERIOR COURT
Cumberland, ss.                                         Civil Action
                                                        Docket No. AP-05-10

THERESA WIPER, et al.,

                    Plaintiffs,

      v.                                                ORDER

CITY OF SOUTH PORTLAND,
et al.,

                    Defendants

      Before the court is a Rule 80B appeal by Plaintiffs Theresa and Donald Wiper,

joined by the Simonton Cove Condominium Association, from a decision by the South

Portland Board of Zoning Appeals (ZBA) granting the application of Stephen

Monaghan, Jr. for a front and rear yard setback variance to expand his existing building

at 24B Myrtle Avenue in the Willard Beach area of South Portland.

      Review of the decision of the ZBA in this case is for abuse of discretion, errors of

law, and findings not supported by substantial evidence in the record. O'Toole v. City

of Portland, 2004 ME 130, ¶ 8, 865 A.2d 555, 558. A reviewing court may not substitute

its judgment for the factual findings made by the ZBA so long as those findings are

supported by substantial evidence even if there also evidence which could support a

different conclusion. E.g., Twigg v. Town of Kennebunk, 662 A.2d 914, 916 (Me. 1995).

      1.    Res Judicata.

      Plaintiffs argue that Monaghan's application for a variance was barred because

he had had a prior variance request denied by a 3-3 vote. This argument can swiftly be

disposed of. First, the record supports the conclusion that Monaghan's second variance

application represented a substantial modification of his earlier proposal and that he

also had submitted substantial new evidence.[1] The ZBA, therefore, was entitled to decide, as it did, that Monaghan's second variance application was not barred by res judicata or foreclosed by section 27-38(i) of the South Portland Zoning Ordinance. See Town of Ogunquit v. Cliff House, 2000 ME 169, ¶ 13, 759 A.2d 731, 735-36; Driscoll v. Gheewalla, 441 A.2d 1023, 1027-28 (Me. 1982).

    2.    Practical Difficulty.

As authorized by 30-A M.R.S.A. § 4353 (4-C) (Supp. 2004), the South Portland ordinance provides in pertinent part that a variance from the ordinance's dimensional standards

> shall be granted when strict application of the ordinance to the petitioner and the petitioner's property would cause a practical difficulty and when the following conditions exist:
>
> (i)    The need for a variance is due to the unique circumstances of the property and not to the general condition of the neighborhood;
>
> (ii)    The granting of a variance will not produce an undesirable change in the character of the neighborhood and will not unreasonably detrimentally affect the use or market value of abutting properties;
>
> (iii)    The practical difficulty is not the result of action taken by the petitioner or a prior owner;
>
> (iv)    No other feasible alternative to a variance is available to the petitioner;
>
> (v)    The granting of a variance will not unreasonably adversely affect the natural environment; and

---

[1] Section 27-38(i) of the South Portland Zoning Ordinance (R. 139) provides as follows:

> If the board of appeals shall deny an appeal a second appeal of a similar nature shall not be brought before the board within one year from the date of the denial by the board of the first appeal, unless in the opinion of a majority of the board, substantial new evidence shall be brought forward, or unless the board finds, in its sole and exclusive judgment, that an error or mistake of law or misunderstanding of facts shall have been made.

(vi)     The property is not located in whole or in part within shoreland areas as described in M.R.S.A. Title 38, Section 435.

Ordinance § 27-36(b)(3), R. 137.

All parties agree that the variance at issue in this case was a variance from dimensional standards (setback requirements) and that the "practical difficulty" standard, as opposed to the more stringent "undue hardship" standard, applies in this case.[2] Plaintiffs, however, contend that the ZBA erred in concluding that strict application of ordinance requirements would cause a "practical difficulty" as that term is defined in section 27-36(b)(3) of the ordinance and in 30-A M.R.S.A. § 4353(4-C).

The practical difficulty standard is defined as follows in the South Portland Ordinance and in 30-A M.R.S.A. § 4353 (4-C):

> As used in this subsection, "practical difficulty" means that the strict application of the ordinance to the property precludes the ability of the petitioner to pursue a use permitted in the zoning district in which the property is located and results in significant economic injury to the petitioner.

Ordinance § 27-36(b)(3), R. 137.

Plaintiffs argue that the ZBA erred in concluding both (1) that strict application of the ordinance would preclude Monaghan from pursuing a permitted use and (2) that strict application of the ordinance would result in significant economic injury to Monaghan. Before considering the arguments made by the parties on this issue, the court needs to consider an issue that has not been raised by the parties – whether to absence of express findings by the ZBA on these issues requires a remand.

---

[2] That the "practical difficulty" standard is intended to be "less stringent" than the undue hardship standard applicable to non-dimensional variances is evidenced by the legislative history of the 1997 amendment adding subsection 4-C to 30-A M.R.S.A. § 4353. See Statement of Fact, L.D. 1074, 118th Legis. (1997).

As set forth above, the ordinance and the statute require a showing that strict application of the ordinance will cause practical difficulty <u>and</u> that six enumerated conditions also exist. The ZBA was careful to make express findings with respect to each of the six enumerated conditions, although many of those findings were summary in nature. <u>See</u> R. 6. With respect to the threshold question of whether strict application of the ordinance would cause "practical difficulty", however, no express finding was made.

This is perhaps understandable under the circumstances of this case. First, the parcel in question has 108 feet of frontage on Myrtle Avenue but is only 55 feet deep. R. 31. Given that the minimum front and rear setbacks in the Residential A Zoning District are 20 feet (R. 142), this leaves Monaghan with a permissible building area only 15 feet wide. The existing structure on the lot, a small seasonal cottage constructed in the 1950's (R. 28, 92), already encroaches into the front setback by approximately 4 feet and into the rear setback by approximately 3 feet. R. 12.

Second, it was conceded, even by those who opposed the Monaghan's application, that some variance was necessary. <u>See</u> R. 92 (written submission of Theresa and Chip Wiper) ("the house was originally designed for a small seasonal cottage and we agree it is not currently adequate in size for a full time occupancy for a family of four"), 178. The only dispute before the ZBA was over the size of the variance requested.

Third, the record reflects that, numerous variances have been granted in the immediate area, including variances for some of the persons who opposed Monaghan's application. R. 35, 36, 37, 62, 74, 76, 82, 84, 86.

In any event, however, either because the ZBA regarded it as a given that some variance was necessary or because it focused solely on subparagraphs (i) through (vi) in

4

Section 27-36(b)(3) and not on the additional requirement that a "practical difficulty" must exist, no express findings were made as to practical difficulty.

A number of recent decisions of the Law Court have emphasized the need for express findings sufficient to allow judicial review. See, e.g., Gensheimer v. Town of Phippsburg, 2005 ME 22 ¶ 25, 868 A.2d 161, 168; Sawyer v. Town of Cape Elizabeth, 2004 ME 71 ¶¶ 22, 25, 852 A.2d 58, 64-65; Carroll v. Town of Rockport, 2003 ME 135 ¶¶ 27-31, 837 A.2d 148, 156-57; Widewaters Stillwater Co., LLC v. Bangor Area Citizens Organized for Responsible Development, 2002 ME 27 ¶¶ 11-12, 790 A.2d 597, 600-01; id, ¶¶ 13-15, 790 A.2d at 601-03 (Rudman, J. concurring); Chapel Road Associates LLC v. Town of Wells, 2001 ME 178 ¶¶ 10-13, 787 A.2d 137, 140-41. In Chapel Road the Law Court left open the possibility that in certain cases factual findings can be implied rather than express. See 2001 ME 178 ¶ 12, 787 A.2d at 140. Some decisions preceding Chapel Road were even more hospitable to the view that necessary factual findings can be inferred from the record. York v. Town of Ogunquit 2001 ME 53 ¶¶ 14-15, 769 A.2d 172, 178 ("If there is sufficient evidence on the record, the Board's decision will be deemed supported by implicit findings"); Wells v. Portland Yacht Club, 2001 ME 20 ¶¶ 10-11, 771 A.2d 371, 375. More recently, however, the Law Court has taken a dim view of implicit findings, E.g., Gensheimer, 2005 ME 22 ¶ 25, 868 A.2d at 168; Sawyer, 2004 ME 71 ¶¶ 21-25, 852 A.2d at 64-65.

Nor does it matter that plaintiffs are not contesting the lack of express findings. In Sawyer, the adequacy of findings was not raised by the plaintiff before the Superior Court but the Law Court nevertheless remanded for further findings. See 2004 ME 71 ¶¶ 22, 25, 852 A.2d at 64-65.

In this case the court can perhaps infer that the conceded inadequacy of the existing residential structure, see R. 92, 178, the fact that the existing structure does not

5

comply with setback requirements, R. 12, the inability to expand that structure into the portion of the property permitted by the setback requirements because of the existing septic system, see R. 31, 58 and the added expense that would be incurred in connecting to the city sewer system if the existing septic system were not used, see R. 58, 228,[3] constituted practical difficulty within the meaning of Section 27-36(b)(3) and 30 M.R.S.A. § 4353 (4-C). If it were to make such inferences, however, the court would be implying the necessary findings for itself, which is not permissible. E.g., Chapel Road, 2001 ME 178 ¶ 13, 787 A.2d at 141.

At a minimum, therefore, this case must be remanded for more findings. Because it affects what action needs to be taken by the ZBA on remand, the court will consider the other contentions raised by the plaintiffs.


3.  Unique Circumstances – Ordinance § 27-36 (b)(3)(i)

The ZBA found, in compliance with § 27-36 (b)(3)(i), R. 137, that the need for a variance was due to the unique circumstances of the property and not the general characteristics of the neighborhood. See R. 6. Plaintiffs challenge this finding. However, there is substantial evidence to support this finding, which was based on the extreme narrowness of the lot, its placement on a dead end street necessitating a space for cars to turn around, the small size of the rooms in the existing dwelling, and the design constraints imposed by the location of the septic system. See, e.g., R. 29, 21, 55, 60. In the materials submitted to the ZBA and in their presentations at the hearing,

---

[3] This assumes that a connection to the city sewer system was even feasible. There was conflicting testimony as to whether there was a construction moratorium that would have prevented connecting with the city sewer system via Myrtle Avenue.

neighbors who opposed the variance conceded that the uniqueness condition was met. R. 110, 198.

4.  Variance will not produce undesirable change in the character of the neighborhood and will not unreasonably affect abutting properties – Ordinance § 27-36 (b)(3)(ii).

The ZBA found the first part of this condition was met in that Monaghan's proposed home will blend in with the rest of the houses in the neighborhood and will be no larger than other homes in the neighborhood. R. 6. Plaintiffs challenge this finding, but there is substantial evidence to support it. See R. 34-40, 56-57, 61-62 (tables showing living area and lot coverage of houses in the neighborhood).

However, on the second part of this condition – that a variance "will not unreasonably detrimentally affect the use or market value of the abutting properties" – no findings were made by the ZBA. On remand the ZBA needs to make findings as to the effect the Monaghan's proposed residence would have on abutting properties.

5.  Practical difficulty is not the result of action taken by petitioner or prior owner – Ordinance § 27-36 (b)(3)(iii).

On this issue the ZBA contented itself with the finding that "the lot and house were created by others". R. 6. There is substantial evidence to support this finding (R. 58) and no evidence to support a contrary finding – that Monaghan or any prior owner took affirmative action that resulted in the creation of the practical difficulty requiring a variance.

Plaintiffs have made the argument that by purchasing a dwelling that he knew was too small and that would require a variance to expand, Monaghan's hardship was self-created. However, since Twigg v. Town of Kennebunk, 662 A.2d 914, 918 (Me. 1995), knowledge of zoning restrictions may be a factor to be considered but does not

7

itself constitute self-created hardship. More recently, in <u>Rocheleau v. Town of Greene</u>, 1998 ME 59 ¶ 5 n.1, 708 A.2d 660, 662 n.1, the Law Court stated that "knowledge of zoning restrictions by a purchaser of a non-conforming lot, without more, will hardly ever constitute a self-created hardship." In <u>Twigg</u>, the Law Court specifically noted that knowledge that variances had been granted under similar circumstances could mitigate a purchaser's prior knowledge of zoning restrictions. <u>See</u> 662 A.2d at 918 n. 6. As noted previously, there is evidence that a considerable number of variances had been granted in the immediate neighborhood in this case. <u>E.g.</u>, R. 62.

6.     <u>No other feasible alternative – Ordinance § 27-36 (b)(3)(iv)</u>.

The fourth specified condition that must be met for a practical difficulty variance is that "[n]o other feasible alternative to a variance is available to the petitioner." § 27-36(b)(3)(iv). <u>See</u> 30-A M.R.S.A. § 4353 (4-C)(D)(Supp. 2004). On this issue the ZBA's finding was as follows:

> There is not. The applicant has looked at other alternatives but has determined that this is the most practical and feasible proposal that meets his family's needs.

R. 6.

Several points should be made with respect to this issue. First, this is the most controversial finding made by the ZBA in that the focus of the opposition to Monaghan's application was not that he should be denied a variance but that the variance he sought was too large. Second, the findings made by the ZBA on this issue are at best ambiguous. If construed to suggest that the applicant is the judge of whether the variance sought is the only feasible alternative, the ZBA erred in adopting this view. The ZBA is required to make its own determination as to the non-existence of feasible alternatives, not defer to the applicant.

8

Alternatively, however, the ZBA's findings can be interpreted as meaning that the applicant had determined that his proposal was the only feasible alternative and that the ZBA agreed with that determination. On remand, the ZBA shall issue the necessary findings to clarify whether it independently determined that no feasible alternative exists to the variance requested by Monaghan. If it has not made such an independent determination, it shall do so.

In this connection, the court also notes that in his application, Monaghan described certain features of his proposal as "non-negotiable" and "absolute". E.g., R. 27, 57. Whether or not an issue is non-negotiable from the applicant's point of view, the absence of a feasible alternative is the issue the Board needs to determine for itself. On the other hand, Monaghan's desire for a kitchen on the third floor and bedrooms measuring 18' x 20' (two items he described as non-negotiable), may not affect the ultimate issue of whether the setback variance he requested should be granted. For example, if Monaghan's need for garage space justifies the setback variances requested on the first floor, then the issue of how Monaghan plans to configure the upper floors may not be relevant – unless the ZBA determines that some constraints on the size or configuration of the upper floors is necessary.

7.    Adverse Effect on Natural Environment – Ordinance § 27-36 (b)(3)(v).

The final condition contested by plaintiffs is whether the ZBA properly found that the granting of a variance would not unreasonably affect the natural environment. On this issue the ZBA made the following summary finding: "it will not". (R. 6). There is substantial evidence to support this finding. (R. 48, 59). In fact, the major opposition expressed on this issue was that there would be an adverse effect if the existing septic system failed. There was evidence before the Board, however, that the septic system

9

had been tested within the preceding three years and was working (R. 163, 221). In the event that problems arose in the future, Monaghan stated he intended to replace the septic system (R. 221), and the mere possibility of future problems does not constitute evidence that could support a finding that a variance would unreasonably affect the natural environment.

If this were the only issue, the court would be inclined to conclude that, given the general finding by the ZBA, the necessary subsidiary findings can be inferred. See Chapel Road, 2001 ME 178 ¶ 12, 787 A.2d at 140-41. Because this case is being remanded for findings on other issues, however, the court will direct the Board to make more detailed findings on this issue as well.

In conclusion, the case will be remanded for further findings as to (1) whether strict application of the ordinance to petitioner and petitioners' property would cause a "practical difficulty"; (2) whether a variance will not unreasonably affect the use or market value of existing properties; (3) whether no other feasible alternative to the variance sought is available; (4) whether a variance will unreasonably adversely affect the natural environment.

To the extent that the court has suggested that there is evidence in the record that could support findings favorable to Monaghan's application, the ZBA should be aware that there is also contrary evidence on some or all of these issues and that the determination of the variance sought by Monaghan is a matter for the ZBA to decide.

The entry shall be:

Case remanded to the South Portland Board of Appeals for further findings in accordance with this order. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

10

Dated: October 31, 2005

Thomas D. Warren
Justice, Superior Court

11